

# NUMBER 13-24-00400-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SONIA TREVINO,                                              **Appellant,**

**v.**

RAMON SEGOVIA,                                            **Appellee.**

## ON APPEAL FROM THE 275TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña**
**Opinion by Justice Tijerina**

This is an appeal from an election contest filed by appellant Sonia Trevino against appellee Ramon Segovia regarding the Democratic Party primary run-off election for Hidalgo County Justice of the Peace, Precinct 3, Place 1. We dismiss the appeal as moot.

## I. BACKGROUND

Segovia and Trevino received the most votes out of three candidates for justice of the peace in the March 2024 Hidalgo County Democratic Party primary. They faced each in a run-off election on May 28, 2024 for the party's nomination. Trevino received thirty-one more votes in the run-off election and was declared the winner.

Segovia filed his original petition alleging: numerous votes were illegally cast by individuals who were registered to vote at an address that was not a residence or not their residence; votes were illegally cast by voters who were assisted to vote even though they were ineligible for assistance, did not request assistance, or received assistance that was unauthorized by the Texas Election Code; mail-in ballots were counted in violation of the election code requirements[1]; voters unlawfully engaged in curbside voting; campaign workers were present inside voters' vehicles during curbside voting; voters were pressured or coerced into voting; voting assistants did not take the required oath and did not sign the required forms registering as "assisters"; election officers did not "police voting stations"; Trevino's campaign workers were present while voters cast their ballots;

---

[1] Segovia provided a litany of allegations in connection to mail-in ballot violations, including: the voter was ineligible to vote by mail; the voter did not sign the application for a mail-in ballot; the voter was assisted by a person other than an early voting clerk and that person failed to provide required information as set forth in the election code; the voter was not eligible for assistance in reading or completing the ballot; the voting assistant failed to sign the oath; the voting assistant failed to enter his signature, printed name, and residence on the official carrier envelope; the voter permitted another person to take possession of the ballot and that person failed to provide his signature, printed name, and residence address on the reverse side of the envelope; the voter did not seal the carrier envelope before it left the voter's hand; the voter received assistance at a polling place pressuring or coercing the voter; the voting assistant prepared the voter's ballot without direction from the voter; the ballot envelope did not contain the signature of the voter; the alleged "mark" of ballot was not witnessed; the alleged signature of the voter is not the voter's signature (the signature differs from the signature on the application for the mail-in ballot); and the ballot was not delivered by mail or in person.

Trevino and her campaign conspired to monitor, influence, and pressure voters; among others. According to Segovia, the number of illegal votes exceeded the margin of victory.

Trevino responded asserting that mail-in votes for Segovia were illegally counted and harvested; voters were assisted that were not qualified to be assisted when voting in person, by curbside, and voting by mail; several votes were cast for Segovia that were not eligible to vote; several mail-in ballots for Trevino were improperly rejected; and "in-person" votes for Trevino were not counted.

On July 15, 2024, a bench trial commenced. Following a thirteen-day trial, the trial court signed a final judgment on August 7, 2024. It disqualified seventy-eight votes cast for Trevino and disqualified three votes for Segovia. After subtracting the illegal votes from the canvassed count, the trial court found that Segovia received forty-four more true votes than Trevino and thereby declared Segovia the winner of the run-off election. Trevino appealed.

On August 20, 2024, the trial court entered very detailed findings of fact and conclusions of law—over 100 pages. A summation of those findings includes the following:

- Trevino campaign workers were electioneering inside polling places;

- 48% of all voters in Sullivan City were assisted;

- Trevino's two children assisted a large number of voters—every single voter assisted by Trevino's children who testified the trial court found was not qualified to be assisted, and each voter testified that they voted for Trevino;

- a Trevino campaign worker—who is not a United States citizen, does not speak English, and cannot vote—assisted English-speaking voters, all of whom voted for Trevino;

3

- almost every voter who testified that he/she was assisted by a Trevino campaign worker did not know the person who assisted them, had never met the assister before, and was not friends with the assister even though the registration sheet indicates the Trevino campaign worker was a "friend";

- *several* individual voters could read English, could read the ballot, could mark the ballot, did not ask for assistance, and did not have a physical disability were approached by Trevino's campaign workers, were assisted by Trevino's campaign workers, were influenced by Trevino campaign workers, did not know the Trevino campaign worker, and voted in the presence of Trevino campaign workers;

- Trevino campaign workers followed the same regime in different polling locations;

- Trevino campaign workers remained inside the voters' vehicles and told the voters who to vote for;

- At least two voters did not know how to read, received phone calls to go vote, were picked up by a Trevino campaign worker, were told to vote for Trevino, were assisted by a Trevino campaign worker, and voted for Trevino;

- Trevino campaign workers went to different adult daycare centers, took voters to go vote, Trevino's children helped these voters vote, and listed them as "friends" on the voter combination form;

- Trevino's court clerk and children—although not election officials—assisted in curbside voting, handed out curbside ballots, and remained present during curbside voting;

- Trevino's children helped voters at the ballot box at polling stations even though they were not campaign officials;

- Trevino campaign workers assisted many voters who had voted in numerous elections before without assistance;

- At the campaign booth, a Trevino campaign worker gave a voter a card with Trevino's name on it, and he voted for Trevino;

- a voter from an adult daycare testified that he did not want to vote without his mother because he had never voted before; that a Trevino campaign worker took him and others to vote anyway; that Trevino's court clerk handed him a card with Trevino's name on it; that Trevino's campaign workers told him if he did not vote, he would get in trouble with the law; that when he tried to walk away, they followed him; that he would never vote again; this voter's mother testified that she was upset

4

her son was taken without her authority because he does not have independent judgment as he is not "all there";

- although forms indicated that at least four voters voted in person, there was evidence that these four voters were driven from an adult daycare center to the polling place and voted curbside, with tablets, and in the presence of each other after Trevino campaign workers campaigned at this daycare;

- Trevino's court clerk pressed the button on the voting tablet to vote on behalf of at least one voter, and therefore this voter did not actually vote;

The trial court stated: "[c]onsidering the public policy of preventing the voter abuse and voter fraud, such as occurred repeatedly in this case," these voters' ballots must be disqualified as the Texas Elections Code was violated "with impunity." Finally, the trial court concluded that Trevino provided no authority that orders issued in federal court were binding on private elections under the Texas Elections Code.

## II. DISCUSSION

It is well-settled that when election contest issues cannot be heard and a final judgment adjudging the validity or invalidity for nomination cannot be entered in time for election officials to comply with the statutory general election deadlines, the election contest becomes moot, and the issues are no longer justiciable. *See Polk v. Davidson*, 196 S.W.3d 632, 634 (Tex. 1946); *Pena v. Hernandez*, No. 13-10-00342-CV, 2010 WL 3722245, at *1 (Tex. App.—Corpus Christi–Edinburg Sept. 20, 2010, no pet.) (mem. op.) (holding the same "even when the contestant may have good cause or grounds for the contest"). Here, the reporter's record was due on August 15, 2024, Trevino's brief was due August 19, 2024, Segovia's brief is due August 22, 2024, and Trevino's reply brief is due August 24, 2024. A partial reporter's record was filed on August 20, 2024; it spans over sixteen volumes and includes testimony from over eighty-nine witnesses. According

5

to the court reporter, a partial record will be hand-delivered to this Court "on DVD due to its voluminous contents" as it is over 6,000 pages long. Trevino submitted a brief with multifarious issues and sub-issues. As of the date of this memorandum opinion, a complete reporter's record and complete briefing has not been filed.[2] However, the statutory deadline for submitting the party's nominee for the general election is August 29, 2024.

"[W]hen a final judgment adjudging the validity or invalidity of a candidate's certificate of nomination is not entered in time for election officials to comply with the statutory deadlines for preparing and conducting the general election," the "election contest becomes moot," and the "only proper judgment is dismissing the appeal." *Salazar v. Gonzales*, 931 S.W.2d 59, 60 (Tex. App.—Corpus Christi–Edinburg 1996, no writ); *see Polk*, 196 S.W.3d at 634; *Peña,* 2010 WL 3722245, at *1 (holding that the case must be dismissed as moot "even when the contestant may have good cause or grounds for the contest"). That is, an election contest may become moot if the start of the general election is imminent and would deprive election officials of sufficient time to comply with the statutory deadlines for preparing and conducting the general election and thereby interfere with the ordinary process of an election. *Salazar*, 931 S.W.2d at 60; *De La Paz v. Gutierrez*, No. 13-19-00133-CV, 2019 WL 1891137, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 29, 2019, no pet.) ("As observed by the Texas Supreme Court as long ago as 1938, the time period between the completion of the primary election and the beginning of general election preparations is often inadequate to allow the appellate process—

---

[2] We place no blame for the delay in the filings in this case.

6

including entry of judgment, perfection of appeal, obtaining and filing the often voluminous clerk's and reporter's records, submission, argument, and decision—to fully run its course."); *see also Maldonado v. Johnson*, No. 04-18-00599-CV, 2018 WL 4517551, at *2 (Tex. App.—San Antonio Sept. 21, 2018, no pet.) (mem. op.) ("[T]he right to appeal a trial court's judgment in a contest of a primary runoff election can become illusory given the time constraints involved."); *In re Meyer*, No. 05-16-00063-CV, 2016 WL 375033, at *4 (Tex. App.—Dallas Feb. 1, 2016, orig. proceeding) ("The constraints on our action are determined by the election schedule.").

Given the extremely voluminous record and expansive nature of the claims raised in this case, we conclude that the appeal is moot because any judgment this Court were to issue in this case would not be entered in time for election officials to comply with statutory deadlines for preparing and conducting the general election. *See* TEX. ELEC. CODE ANN. § 231.009 ("An election contest has precedence in the appellate courts and shall be disposed of as expeditiously as practicable."); *Salazar*, 931 S.W.2d at 60 ("Courts have often commented that the right to appeal a contest of a primary election, though provided for by statute, becomes illusory in light of the time constraints involved."); *De La Paz*, 2019 WL 1891137, at *7 ("Under the statutory regime and the controlling case law . . . it is more accurate to say that the right to *contest* a primary election in the first place is largely illusory."). Nonetheless, the trial court's findings of fact shed light on the events that transpired at trial, which are extremely troubling to the sanctity of our electoral process and undermine the purity of the ballot. As this Court stated, "[e]lection fraud perverts democracy and constitutes a grave offense, not only against the opposing

7

candidate but against society as a whole." *O'Cana v. Salinas*, No. 13-18-00563-CV, 2019 WL 1414021, at *11 (Tex. App.—Corpus Christi–Edinburg Mar. 29, 2019, pet. denied) (mem. op.). However, our inquiry "is not to determine whether crimes have been committed . . . we confidently leave those questions to the able hands of the criminal justice system." *Id.* Instead, "we are mindful of our solemn duty to preserve and protect the integrity of the election process." *Id.* Accordingly, the trial court's judgment declaring Segovia "the winner of the May 28, 2024[,] Hidalgo County Justice of the Peace, Precinct 3, Place 1 Democratic Primary Run-off Election" stands and remains undisturbed. All pending motions are hereby dismissed as moot.[3] No motion for rehearing will be entertained. *See* TEX. ELEC. CODE ANN. § 232.014(e) ("The court of appeals may refuse to permit a motion for rehearing to be filed.").

### III.  CONCLUSION

We dismiss the appeal as moot.

JAIME TIJERINA
Justice

Delivered and filed on the
21st day of August, 2024.

---

[3] Although the election code automatically suspends enforcement of a trial court's judgment in an election contest upon the perfection of an appeal, this appeal is now disposed of and is no longer pending. As a result, the trial court's judgment declaring Segovia the winner is no longer suspended. *See* TEX. ELEC. CODE ANN. § 232.016.